UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHEN BUTTERMORE,

             Plaintiff,

                                           Case No. 16-14267

v.

                                           Paul D. Borman

NATIONSTAR MORTGAGE LLC,          United States District Judge
and FEDERAL NATIONAL
MORTGAGE ASSOCIATION,

             Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

In this 16-count lawsuit, Plaintiff Stephen Buttermore alleges that Defendants Nationstar Mortgage LLC ("**Nationstar**") and Federal National Mortgage Association ("**Fannie Mae**") violated various state and federal laws in connection with the servicing of (and ultimately foreclosure on) his mortgage.

Now before the Court is Defendants' Motion to Dismiss. (ECF No. 7, Defs.' Mot.) For the reasons that follow, the Court will grant Defendants' Motion and dismiss this action with prejudice.

## I.      BACKGROUND

### A.    Factual Allegations

In the fall of 2006, Plaintiff purchased real property located at 1601

Marylestone Drive in West Bloomfield, Michigan (the "**subject property**"), via a warranty deed executed on September 27, 2006. (ECF No. 1 Ex. 1 at Pg ID 36-126 ("**Compl.**") ¶¶ 4, 9; Compl. Ex. 1 at Pg ID 67-69, Warranty Deed.) To fund the purchase, Plaintiff borrowed $128,000 from non-party Quicken Loans, Inc., as represented by a September 27, 2006 promissory note. (Compl. ¶ 11; ECF No. 7, Defs.' Mot. Ex. A, Note.)[1] That loan was secured by a mortgage dated September 27, 2006. (Compl. ¶ 14; Compl. Ex. 2 at Pg ID 70-86, Mortgage.) On February 17, 2015, Quicken Loans, Inc. assigned the mortgage to Nationstar. (Compl. ¶ 15; Compl. Ex. 3 at Pg ID 87-88, Assignment of Mortgage.)

Plaintiff alleges that after staying current on his loan payments for several years, he suffered an injury that caused him to fall behind on them. (Compl. ¶ 33.) He then contacted Nationstar regarding loss mitigation options, including loan modification, whereupon a Nationstar representative conducted an initial interview with Plaintiff, determined that he qualified for mortgage assistance, and instructed him to forward various forms and documents to Nationstar. (Compl. ¶¶ 54-55.) Plaintiff alleges that he sent Nationstar an initial loss mitigation application as well as supplemental documents as needed, but that Nationstar "routinely lost documents, misrepresented payment figures and account information, misapplied

---

[1] Although the Note was not attached as an exhibit to the Complaint, it is appropriate for consideration here because it was "referred to in the Complaint and . . . central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

payments, failed to accurately maintain Plaintiff's Mortgage account and charged Plaintiff with excessive fees and interest." (Compl. ¶¶ 56-58.) Although Plaintiff relied on Nationstar's assurance that he would be given a "permanent loan modification, in exchange for various payments of money, and other actions to be undertaken by Plaintiff[,]" Nationstar never permanently modified Plaintiff's loan as promised, and instead initiated foreclosure proceedings. (Compl. ¶¶ 60-62.) Plaintiff alleges that Nationstar never gave Plaintiff a decision on his loss mitigation application. (Compl. ¶ 59.)

The Complaint further alleges that although Plaintiff "watched diligently for any notices with respect to the Mortgage in the mail, on the Subject Property, and by telephone[,]" he did not receive any notices from Nationstar regarding default, acceleration, or remedies. (Compl. ¶¶ 34-35.) Nationstar "wrongfully accelerated the debt, thus effectively nullifying Plaintiff's 'right to cure' and leaving Plaintiff with only the right either (a) to pay the amount required to reinstate the loan or, (b) to pay the entire accelerated loan balance in full." (Compl. ¶ 36.)

On January 14, 2016, Nationstar published a foreclosure notice regarding the subject property. The foreclosure notice stated that the amount still owed by Plaintiff on the mortgage was $127,525.55; that the subject property would be sold at a sheriff's sale on February 16, 2016; and that "[t]he redemption period shall be 6 months from the date of such sale, unless determined abandoned in accordance

with MCLA 600.3241a, in which case the redemption period shall be 30 days from the date of such sale." (Compl. ¶¶ 39-40; Compl. Ex. 5 at Pg ID 96-97, Foreclosure Notice.) There is nothing to indicate that the subject property was abandoned, and so the redemption period ended on August 16, 2016.[2]

Per the Complaint, on or about January 22, 2016, a notice of the sheriff's sale was "allegedly" posted on the door of the residence on the subject property, where Plaintiff was residing. (Compl. ¶ 43.) In addition, a notice of sale was "allegedly" published in an Oakland County newspaper on January 14, 21, and 28, and on February 4, 2016. (Compl. ¶ 44.) Regardless, Plaintiff asserts that he "was never given any other notice that would have advised him of the fact that [Nationstar] had scheduled a foreclosure sale of his home[,]" and that he "had no actual notice of the sale prior to the sale." (Compl. ¶¶ 46-47.)

On February 16, 2016, Defendant Fannie Mae purchased the subject property at the sheriff's sale for $96,572. (Compl. ¶ 16; Compl. Ex. 4 at Pg ID 90-95, Sheriff's Deed.)

On August 16, 2016, Plaintiff's attorney sent a letter to Nationstar on Plaintiff's behalf, purporting to be a "qualified written request" under the Real Estate Settlement Procedures Act ("**RESPA**"), 12 U.S.C. § 2605(e). (Compl. ¶ 72;

_____

[2] The Complaint—filed on November 4, 2016—acknowledges August 16, 2016 as the end of the redemption period, but states erroneously, one paragraph later, that the redemption period "is purportedly close to expiring." (Compl. ¶¶ 51-52.)

4

Compl. Ex. 6 at Pg ID 98-106, 08/16/16 Letter to Nationstar Mortgage, LLC (QWR).) In the letter, Plaintiff's attorney disputed the debt that Nationstar claimed Plaintiff owed, and requested various documents related to the debt, including a copy of the original promissory note, contact information for various persons connected to the loan, a complete audit history, statements of advances and escrow, and other documents. Nationstar received the letter on August 23, 2016. (Compl. ¶ 80; Compl. Ex. 7 at Pg ID 107-109, United States Post Office Tracking Information for August 16, 2016 QWR.)

Plaintiff alleges that Nationstar did not respond to the letter. On October 12, 2016, Plaintiff's attorney sent a second letter to Nationstar, which noted that it was the second attempt to procure the requested information, but was otherwise identical to the first letter. (Compl. ¶ 84; Compl. Ex. 8 at Pg ID 110-118, 10/12/16 Letter to Nationstar Mortgage, LLC (QWR).)

Nationstar received the second letter on October 17, 2016. (Compl. ¶ 85; Compl. Ex. 9 at Pg ID 119-121, United States Post Office Tracking Information for October 12, 2016 QWR.) In a response dated the same day, Nationstar acknowledged receipt of the second letter, and stated that Nationstar's "goal is to provide a response no later than October 26, 2016" but that "responses are generally provided in less than ten days from receipt of the correspondence." (Compl. ¶ 86; Compl. Ex. 10 at Pg ID 122-126, October 17, 2016 Letter from

Nationstar.) Plaintiff alleges that this was the only correspondence he received from Nationstar, that nothing in that response corresponded to any of the requests in his letters, and at no point did Nationstar provide any of the information he requested. (Compl. ¶¶ 86-87, 89.) Plaintiff also alleges that Nationstar engaged in negative reporting regarding his credit, both before and after the August 16 letter. (Compl. ¶¶ 69, 91.)

Plaintiff alleges broadly that he suffered damages in unspecified amounts and in various categories, including emotional distress, by virtue of the misconduct alleged in the Complaint. (Compl. ¶¶ 67-68.)

## B. Procedural History

Plaintiff filed the Complaint in the Circuit Court of Oakland County on November 4, 2016, and Defendants timely removed the action to this Court. (ECF No. 1, Notice of Removal.)

After reciting the factual allegations summarized above, the Complaint sets forth a total of 16 counts. Through Count I, Plaintiff seeks declaratory relief as to both Defendants. Two claims are pled against Fannie Mae only: Quiet Title (Count II) and Slander of Title (Count XIII). The remaining claims—and thus the bulk of the lawsuit—are pled against Nationstar: three Illegal Foreclosure claims (Counts III-V); one claim under the Fair Debt Collection Practices Act ("**FDCPA**"), 15 U.S.C. § 1692 *et seq.* (Count VI); three claims under RESPA, as implemented by

12 C.F.R. § 1024.41 ("**Regulation X**") (Counts VII, IX and X); one claim under the Truth in Lending Act ("**TILA**"), 15 U.S.C. § 1601 *et seq*., as implemented by 12 C.F.R. § 226.1 *et seq*. ("**Regulation Z**") (Count VIII); one Breach of Contract claim (Count XI); one Intentional Misrepresentation and Fraud claim (Count XII); one claim for declaratory relief invoking the equitable doctrine of "unclean hands" (Count XIV); one claim under the Michigan Consumer Protection Act ("**MCPA**"), Mich. Comp. Laws § 445.901 *et seq*. (Count XV); and one claim requesting that the foreclosure, if it is not found to be invalid, be converted to a judicial foreclosure under Michigan law (Count XVI).

Defendants filed the present Motion to Dismiss on January 11, 2017. (ECF No. 7, Defs.' Mot.) After two stipulated orders to extend time (ECF Nos. 9-10), Plaintiff filed a Response on February 22, 2017 (ECF No. 11, Pl.'s Resp.). Defendants filed a timely Reply. (ECF No. 12, Defs.' Repl.)

## II.     STANDARDS OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012).

To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal–Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay*, 695 F.3d at 539 (internal citations and quotation marks omitted).

In other words, a plaintiff must provide more than "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56. The Sixth Circuit has recently reiterated that "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

A court ruling on a Rule 12(b)(6) motion to dismiss "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained

therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir. 2001)).

## III.  ANALYSIS

One of the sixteen counts in the Complaint is pled against both Defendants, two are pled against Fannie Mae, and the rest are pled against Nationstar. For the reasons articulated below, none of the claims has merit, and the Court will grant Defendants' Motion to Dismiss as to all of them.

### A.  Declaratory Judgment (Counts I and XIV)

Plaintiff seeks declaratory relief in Counts I and XIV—the former against both Defendants and the latter against Nationstar only. Count I requests a general declaration of the parties' rights and interests, while Count XIV invokes the doctrine of "unclean hands" as a basis for a finding that Nationstar "is not entitled to the equitable relief of foreclosure."[3] (Compl. ¶ 189.)

"[D]eclaratory relief is a remedy [ ], not a claim." *Radske v. Fed. Nat'l Mortg. Ass'n*, No. 15-14107, 2016 WL 3667957, at *7 (E.D. Mich. July 11, 2016) (Borman, J.) (quoting *Mettler Walloon, L.L.C. v. Melrose Twp.*, 281 Mich. App. 184, 220 (Mich. Ct. App. 2008)). As discussed below, Plaintiff has not stated a claim that would justify any remedy, and so the Court will dismiss Count I of the

---

[3] In this respect, Count XIV seems to ignore the fact that even as of the time the Complaint was filed in state court, Nationstar had already obtained *statutory* foreclosure, and the redemption period had expired.

Complaint.

The "unclean hands" claim alleged in Count XIV has been repeatedly dismissed in other cases filed by Plaintiff's counsel in this District.[4] This Court explained in one such case that "the doctrine of unclean hands is not a claim; rather

---

[4] The same could be said of nearly every other claim asserted in this lawsuit, which are "similar, and in many cases identical, to claims that this Court has routinely dismissed in other actions brought by [Plaintiff's] counsel." *Wypych v. Deutsche Bank Nat'l Trust Co. on behalf of Holders of the Accredited Mortg. Loan Trust 2005-2 Asset Backed Notes*, No. 16-CV-13836, 2017 WL 1315721, at *1 (E.D. Mich. Apr. 10, 2017) (dismissing an action filed by Plaintiff's counsel that was comprised of claims nearly identical to those asserted in this action, and collecting similar cases). Courts in this District have done this in an increasingly large number of cases involving claims indistinguishable or near-indistinguishable from those alleged in this action. *See, e.g., Cruz v. Capital One, N.A.*, 192 F. Supp. 3d 832, 840 (E.D. Mich. 2016); *Radske v. Fed. Nat'l Mortg. Ass'n*, No. 15-14107, 2016 WL 3667957 (E.D. Mich. July 11, 2016) (Borman, J.); *Fredericks v. Mortg. Elec. Registration Sys., Inc.*, 2015 WL 3473972 (E.D. Mich. June 2, 2015) (Borman, J.); *Watts v. Mortg. Bridge Sols., LLC*, No. 16-10552, 2016 WL 8188768 (E.D. Mich. Dec. 7, 2016), report and recommendation adopted, 2017 WL 438745 (E.D. Mich. Feb. 1, 2017); *Trudell v. Carrington Mortg. Servs., L.L.C.*, No. 16-10441, 2016 WL 6080822 (E.D. Mich. Sept. 27, 2016), report and recommendation adopted, 2016 WL 6070124 (E.D. Mich. Oct. 17, 2016); *Winters v. Deutsche Bank Nat'l Trust Co.*, No. 15-13456, 2016 WL 5944717 (E.D. Mich. Sept. 14, 2016), report and recommendation adopted, 2016 WL 5930528 (E.D. Mich. Oct. 12, 2016); *Garrow v. JPMorgan Chase Bank, N.A.*, No. 15-14058, 2016 WL 2894066 (E.D. Mich. Apr. 27, 2016), report and recommendation adopted, 2016 WL 2866410 (E.D. Mich. May 17, 2016); *Upshaw v. Green Tree Servicing LLC*, No. 15-13866, 2015 WL 9269136 (E.D. Mich. Dec. 21, 2015); *Goodman v. Citimortgage, Inc.*, No. 15-12456, 2015 WL 6387451 (E.D. Mich. Oct. 22, 2015); *Rimer v. Bank of N.Y. Mellon*, No. 15-11890, 2015 WL 4430292 (E.D. Mich. July 20, 2015); *Caggins v. Bank of N.Y. Mellon*, No. 15-11124, 2015 WL 4041350 (E.D. Mich. July 1, 2015); *Hogan v. Visio Fin. Servs., Inc.*, No. 15-10923, 2015 WL 3916084 (E.D. Mich. June 25, 2015); *Fredericks v. Allquest Home Mortg. Corp.*, No. 15-10429, 2015 WL 1966856 (E.D. Mich. Apr. 30, 2015); *Nadratowski v. Mortg. Elec. Registration Sys.*, No. 14-14010, 2015 WL 519242 (E.D. Mich. Feb. 9, 2015).

the 'clean-hands doctrine closes the doors of equity to one tainted with inequitableness or bad faith to the matter in which he or she seeks relief, regardless of the improper behavior of the defendant.'" *Radske*, 2016 WL 3667957, at *7 (quoting *Richards v. Tibaldi*, 272 Mich. App. 522, 537 (Mich. Ct. App. 2006)); *see also Watts v. Mortg. Bridge Sols., LLC*, No. 16-10552, 2016 WL 8188768, at *11-12 (E.D. Mich. Dec. 7, 2016) ("Plaintiff's inclusion of a count premised on the doctrine of unclean hands is puzzling in that it is generally pled as an affirmative defense, not as a cause unto itself."); *Trudell v. Carrington Mortg. Servs., L.L.C.*, 2016 WL 6080822, at *9-10 (E.D. Mich. Sept. 27, 2016) ("Where title acquired through foreclosure was based in law (in a statute) . . . the unclean hands doctrine is inapplicable. Plaintiff's attempt to raise unclean hands as an affirmative claim must fail since unclean hands is a defense and not an independent cause of action to undo a foreclosure by advertisement [.]") (internal citations and quotation marks omitted). The claim is no more cognizable now than it was in prior cases filed by Plaintiff's counsel, and will therefore be dismissed.

For these reasons, the Court will dismiss Counts I and XIV.

**B.      Claims Against Defendant Nationstar**

The bulk of the claims in this action are brought against Nationstar. For the reasons set forth below, none of these claims are sufficient to avoid dismissal, and the Court will dismiss them accordingly.

### 1.     Illegal Foreclosure (Counts III-V)

"Michigan courts have held that once the statutory redemption period lapses, they can only entertain the setting aside of a foreclosure sale where the mortgagor has made 'a clear showing of fraud, or irregularity.'" *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 359 (6th Cir. 2013) (quoting *Schulthies v. Barron*, 16 Mich. App. 246, 248 (Mich. Ct. App. 1969)). Plaintiffs seeking to set aside foreclosures by advertisement in Michigan must also show "that they were prejudiced by defendant's failure to comply" with the governing statutory provisions. *Conlin*, 714 F.3d at 361 (quoting *Kim v. JPMorgan Chase Bank, N.A.*, 493 Mich. 98, 115-16 (2012)). "To demonstrate such prejudice, they must show that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute." *Id.*

The Complaint alleges wrongful foreclosure by Nationstar on three different grounds. Count III appears to allege a general failure on Nationstar's part to comply with Michigan's foreclosure by advertisement statute, Mich. Comp. Laws § 600.3201, but the only specific allegation is that Nationstar failed to "properly calculate the amount claimed to be due on the date of the notice of foreclosure by including amounts not rightfully incurred." (Compl. ¶ 109.) Count IV alleges that the foreclosure was illegal because Nationstar accelerated the mortgage and then advertised the sheriff's sale without giving Plaintiff proper notice of default.

(Compl. ¶¶ 111-115.) Count V attempts to state a "dual-tracking" claim, alleging that Nationstar initiated foreclosure proceedings while simultaneously considering Plaintiff for alternatives to foreclosure. (Compl. ¶¶ 116-119.)

As to Count III, Defendants argue that any allegation that Nationstar failed to comply with the foreclosure by advertisement statute generally must fail, since Plaintiff has not alleged that the four prerequisites[5] for a valid foreclosure by advertisement were not met: Plaintiff defaulted, no action had been commenced on the promissory note at the time of foreclosure proceedings, the mortgage was properly recorded, and Nationstar was the servicer and mortgagee of record. Defendants are correct in this regard. And to the extent that Count III alleges a failure to properly calculate the amount claimed on the foreclosure notice, it is deficient on that basis as well. This Court dismissed a materially identical claim made in another case filed by Plaintiff's counsel, having determined that the

---

[5] Mich. Comp. Laws § 600.3204(1) provides:
A party may foreclose a mortgage by advertisement if all of the following circumstances exist:
(a) A default in a condition of the mortgage has occurred, by which the power to sell became operative.
(b) An action or proceeding has not been instituted, at law, to recover the debt secured by the mortgage or any part of the mortgage or, if an action or proceeding has been instituted, either the action or proceeding has been discontinued or an execution on a judgment rendered in the action or proceeding has been returned unsatisfied, in whole or in part.
(c) The mortgage containing the power of sale has been properly recorded.
(d) The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage.

plaintiffs in that case

> do not allege the claimed improper amount nor do they allege what
> they believe the proper amount should have been. Plaintiffs' counsel is
> well aware of the failure of such allegations to withstand a motion to
> dismiss, as other courts in this District have dismissed identical claims
> in other of Mr. Lutz's cases based on similarly vague allegations[.]

*Fredericks v. Mortg. Elec. Registration Sys., Inc.*, No. 14-14270, 2015 WL
3473972, at *4 (E.D. Mich. June 2, 2015) (Borman, J.) (citing *Fredericks v.
Allquest Home Mtg. Corp.*, No. 15–10429, 2015 WL 1966856, at *2 (E.D. Mich.
April 30, 2015) and *Frank v. Mortgage Electronic Registration Systems, Inc., et
al.*, No. 14–13518, 2014 WL 6886589, at *2–3 (E.D. Mich. Dec.4, 2014)).

On Count IV, Defendants argue that contrary to Plaintiff's allegations, they
did in fact give him notice of his default. Defendants have submitted that notice as
an exhibit to their Motion to Dismiss (Defs.' Mot. Ex. C, Notice of Default), and
they argue that it may be considered by this Court in evaluating the Motion
because "Plaintiff alleges that these documents do not exist in the Complaint and
these documents are central to Plaintiff's ability to state a claim." (Defs.' Mot. at 10
n.3 (citing *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir.
1999) and *Weiner v. Klaus & Co.*, 108 F.3d 86, 88-89 (6th Cir. 1999)).) This
misstates the law. In *Greenberg*, the Sixth Circuit held that a district court may
consider an exhibit attached to a defendant's motion to dismiss without having to
convert the proceedings to a summary judgment motion when the exhibit "*is

*referred to in the complaint* and is central to the plaintiff's claim . . ." *Greenberg*, 177 F.3d at 514 (emphasis added). There is no Sixth Circuit authority for the proposition that the "referred to in the complaint" standard includes a plaintiff's allegation that a document does not exist, and to hold otherwise would undercut the purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), which is "to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true" rather than to adjudicate factual disputes. *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001).

Count IV still fails to state a claim, though, because Plaintiff has not alleged prejudice, as has been consistently required by the Michigan courts for the setting aside of a foreclosure by advertisement. The only allegation of prejudice connected to this claim is Plaintiff's assertion that he "could have been in a position to reinstate the Loan" prior to the sheriff's sale. (Compl. ¶ 49.) Plaintiff's allegations do not elaborate on this conclusory statement, or otherwise explain why it was the case. This sort of allegation does not plead the requisite prejudice with sufficient plausibility. *See Wypych v. Deutsche Bank Nat'l Trust Co. on behalf of Holders of the Accredited Mortg. Loan Trust 2005-2 Asset Backed Notes*, No. 16-CV-13836, 2017 WL 1315721, at *5 (E.D. Mich. Apr. 10, 2017) ("Here, [the plaintiff] has not alleged prejudice. He alleges only that absent the alleged irregularities, he 'may'

have been in a position to avoid foreclosure. . . . That is not enough."); *Goodman v. Citimortgage, Inc.*, No. 15-12456, 2015 WL 6387451, at *3 (E.D. Mich. Oct. 22, 2015) (plaintiffs did not sufficiently allege prejudice when they "fail[ed] to suggest how, if at all, they would have been in a better position had [the defendant] complied with the notice requirements under Mich. Comp. Laws § 600.3204"); *Nadratowski v. Mortg. Elec. Registration Sys.*, No. 14-14010, 2015 WL 519242, at *2 (E.D. Mich. Feb. 9, 2015) (dismissing a similar claim where the plaintiff did not make any specific "suggestion of prejudice stemming from a defect in the foreclosure process"). Even if Nationstar had failed to give Plaintiff any notice of foreclosure, a wrongful foreclosure claim based on that fact would fail due to the absence of any real prejudice allegations.

The same problem afflicts Count V, which alleges wrongful foreclosure based on dual tracking. But it is also worth noting that Count V's allegations would be insufficient to state a wrongful foreclosure claim even if prejudice were alleged. Courts in this District have repeatedly held in cases filed by Plaintiff's counsel that dual-tracking allegations do not constitute allegations of irregularities in the foreclosure process, as required to set aside a foreclosure by advertisement. "Despite Plaintiff's attempt to blend the loan modification process and foreclosure process, case law in this district holds each process separate." *Trudell*, 2016 WL 6080822, at *4 (further explaining that "[d]ual tracking violations relate to the loan

modification process rather than the foreclosure process, and thus even if accepted as true, Plaintiff's allegation of dual tracking cannot demonstrate a 'fraud or irregularity' necessary to toll the redemption period") (internal quotation marks omitted), report and recommendation adopted, 2016 WL 6070124 (E.D. Mich. Oct. 17, 2016); *Radske*, 2016 WL 3667957, at *4 ("Plaintiff's claim that Defendants engaged in 'dual tracking' is . . . insufficient to support a claim of wrongful foreclosure under the Michigan statute.").

For these reasons, the Court will dismiss Counts III, IV, and V.

### 2.    Fair Debt Collection Practices Act (Count VI)

In Count VI, Plaintiff alleges that Nationstar violated the FDCPA in various ways, most of them involving some form of fraud or misrepresentation. (Compl. ¶ 128.) Defendants characterize the FDCPA claim as derivative of the wrongful foreclosure claim, and thus deficient because the wrongful foreclosure claim is. Defendants further argue that the allegations in the Complaint do little more than recite the elements of the statute and therefore fail to state claims because they are insufficiently specific, which the Sixth Circuit has recognized as a valid basis for dismissing an FDCPA claim.[6] *See Yaldo v. Homeward Residential, Inc.*, 622 F. App'x 514, 516 (6th Cir. 2015) (upholding the dismissal of an FDCPA claim where

---

[6] The deficiency is all the more acute in the allegations involving fraud, since Fed. R. Civ. P. 9(b) requires that a plaintiff making such claims "must state with particularity the circumstances constituting fraud."

the plaintiff had "alleged no facts to support her conclusory assertion that defendants are debt collectors who violated the FDCPA").

Whatever rebuttal could have been made to either or both arguments was not made in Plaintiff's Response, which did not address Defendants' arguments on the FDCPA claim at all. This is grounds for dismissal of the claim. *See Wypych*, 2017 WL 1315721, at *4 (dismissing an FDCPA claim and others as abandoned where the plaintiff's attorney had "fail[ed] to present even a perfunctory defense of most of his claims") (citing *Cruz v. Capital One, N.A.*, 192 F.Supp.3d 832, 838 (E.D. Mich. 2016) (dismissing various foreclosure-related claims brought by the same attorney where he "did not offer any argument in defense" of the claims in response to motion to dismiss).

The Court finds this reasoning persuasive, and will dismiss Count VI.

### 3. Real Estate Settlement Procedures Act and Regulation X (Counts VII, IX, X)

Three of the 16 Counts in the Complaint are based on RESPA and its implementing regulations—in particular, Regulation X (12 C.F.R. § 1024.41). Count VII alleges that Nationstar violated Regulation X by pursuing loss mitigation options contemporaneously with foreclosure proceedings. Count IX alleges that Nationstar violated RESPA itself by failing to respond to Plaintiff's written requests for information in late 2016. Count X alleges a separate violation

of RESPA, based on an allegation that Plaintiff was never notified that the servicing of his mortgage was transferred to Nationstar.

As a threshold issue, Defendants argue that notwithstanding any references in the Complaint to other regulations under the same chapter, only 12 C.F.R. § 1024.41 can be the basis for a private action. Decisional law from previous cases brought by Plaintiff's counsel in this District supports Defendants' argument. *See Watts*, 2016 WL 8188768, at *6 ("Under Regulation X, a borrower is only permitted a private cause of action for a violation under § 1024.41, which specifically provides that "[a] borrower may enforce the provisions of this section...." 12 C.F.R. § 1024.41(a). . . . [O]ther sections of Regulation X do not provide for a private cause of action."), *report and recommendation adopted*, 2017 WL 438745 (E.D. Mich. Feb. 1, 2017); *see also Trudell*, 2016 WL 6080822, at *7 (noting that "§ 1024.40 provides no private right of action whatever"). If Plaintiff has any claim under Regulation X, it is under 12 C.F.R. § 1024.21.

Defendants argue that Plaintiff's dual-tracking claim under Regulation X must fail because he has not alleged that he submitted a "complete loss mitigation application" as required by § 1024.41(b)(1). In support, Defendants cite *Trudell*, in which the court dismissed a dual-tracking claim on this basis. *Trudell* is distinguishable, however, because in that case, "Plaintiff never even suggest[ed] that Defendant *offered* a loss mitigation option, much less that Plaintiff submitted a

complete loss mitigation application. Each assertion skirt[ed] the relevant requirement without actually fulfilling it." *Trudell*, 2016 WL 6080822, at *6 (emphasis in original). The Complaint in this action is almost as spare as that in *Trudell*, but it does allege that Plaintiff submitted at least one loss mitigation application to Nationstar. (Compl. ¶¶ 18, 22.) It also cannot rightfully be said that Plaintiff fails to allege the existence of a "complete" loss mitigation application; Regulation X defines this term as "an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower[,]" 12 C.F.R. § 1024.41(b)(1), and the Complaint does allege that Plaintiff provided Nationstar with all documentation that it required. (Compl. ¶ 56.)

Plaintiff has not, however, plausibly alleged damages arising from the dual-tracking he claims Nationstar committed. RESPA, as implemented by Regulation X, permits the recovery of two forms of damages: "actual money damages and statutory damages for 'a pattern or practice of noncompliance.'" *Winters v. Deutsche Bank Nat'l Trust Co.*, No. CV 15-13456, 2016 WL 5944717, at *2 (E.D. Mich. Sept. 14, 2016) (dismissing a Regulation X claim in an action brought by Plaintiff's counsel where the plaintiff "failed to allege with sufficient particularity any actual monetary damages, or a pattern or practice of noncompliance on the part

of defendants"), *report and recommendation adopted*, 2016 WL 5930528 (E.D. Mich. Oct. 12, 2016). In Count VII, Plaintiff alleges vaguely that Nationstar "engaged in a pattern or practice of non-compliance by, among other offenses, pursuing loss mitigation options contemporaneously with active foreclosure proceedings." (Compl. ¶ 134.) Plaintiff has alleged no specific facts to support his allegation of such a "pattern or practice" as required for statutory damages under RESPA, and has not alleged any particular basis for actual damages either. Count VII will be dismissed accordingly.

Counts IX and X fail for the same reason. As another court in this District recently explained in another case brought by Plaintiff's counsel, a RESPA complaint "must allege facts showing that damages occurred as a result of the alleged violations. Naked claims of damages, unconnected to such facts, are not enough to state a claim." *Mrla v. Fed. Nat'l Mortg. Ass'n*, No. 15-CV-13370, 2016 WL 3924112, at *3 (E.D. Mich. July 21, 2016) (internal citations and quotation marks omitted).

Count IX is based on Nationstar's alleged failure to respond to Plaintiff's written requests for information. Significantly, the Complaint demonstrates that the first of these requests was dated two days after the expiration of the redemption period, which dramatically undermines any argument that Nationstar's alleged subsequent failures to respond were the cause of actual damages. (Compl. Ex. 6,

08/16/16 Letter to Nationstar Mortgage, LLC (QWR).) All the same, the Complaint alleges that Plaintiff's actual damages include (but are not limited to) "(1) out-of-pocket expenses incurred dealing with the RESPA violation including expenses for preparing, photocopying and obtaining certified copies of correspondence, (2) lost time and inconvenience to the extent it resulted in actual pecuniary loss, (3) late fees and (4) denial of credit or denial of access to full amount of credit line." (Compl. ¶ 157.) The notion that the second, third, and fourth of these constituted actual costs or expenses to Plaintiff is not supported anywhere else in the Complaint. The first item on that list—litigation expenses—is slightly more specific (albeit only marginally). Even that cannot be said to be an allegation of damages that Plaintiff incurred "as a result of the alleged violations," though, since those costs would have been incurred whether Nationstar's conduct was ultimately deemed to violate RESPA or not. As to Count IX, Plaintiff "has not demonstrated his entitlement to money damages because he fails to allege . . . how they might be traceable to [Defendants'] conduct." *Watts*, 2016 WL 8188768, at *7 (quoting *Hogan v. Visio Fin. Servs., Inc.*, 2015 WL 3916084, at *4 (E.D. Mich. June 25, 2015)).

Count X merely alleges that Plaintiff "suffered damages due to Nationstar Mortgage, LLC's failure to inform him of the transfer of the servicing of the Mortgage Loan." (Compl. ¶ 162.) Count X is therefore also deficient for failure to

allege actual damages.

Because Plaintiff has not adequately made the allegations required for actual or statutory damages under RESPA, Counts VII, IX, and X will be dismissed.

### 4. Truth in Lending Act and Regulation Z (Count VIII)

Count VIII of the Complaint alleges that Nationstar violated TILA and Regulation Z by failing to inform Plaintiff that the servicing of his loan had been transferred to Nationstar.

Defendants make two arguments in response to Count VIII's allegations of TILA and Regulation Z violations by Nationstar. First, they argue that the claim is barred by TILA's one-year statute of limitations. Second, they argue that Nationstar, as servicer of the loan in question, is not a "creditor" under TILA. Plaintiff responds only to the first of these, with a vague argument that equitable tolling of the statute of limitations is in order because of Nationstar's "fraudulent conduct." (Pl.'s Resp. at 28.)

"In order to succeed on such an equitable tolling claim, [Plaintiff] must plead and prove that (1) [Defendant] took affirmative steps to conceal [his] cause of action; and (2) [he] could not have discovered the cause of action despite exercising due diligence." *Wypych*, 2017 WL 1315721, at \*7 (quoting *Mills v. Equicredit Corp.*, 294 F.Supp.2d 903, 909-10 (E.D. Mich. 2003) (Borman, J.)) (internal quotation marks omitted). Plaintiff has not made allegations that approach

either of these elements, and is thus not entitled to equitable tolling.

Even if he were, Plaintiff has failed altogether to respond to Defendants' second argument: that the Complaint does not allege that Nationstar, the servicer of the loan, was assigned the underlying debt such that it was a "creditor" under TILA and Regulation Z, and not merely the mortgage that secured it. *See Robertson v. U.S. Bank, N.A.*, 831 F.3d 757, 762 (6th Cir. 2016) ("[Regulation Z's] notice requirement applies only to an assignment of the underlying debt, not to the instrument . . . that secures the transaction.") Because Plaintiff only responds in a general fashion to Defendants' equitable tolling argument, he has abandoned this claim as well.

Accordingly, the Court will dismiss Count VIII.

### 5. Breach of Contract (Count XI)

In Count XI, Plaintiff alleges that Nationstar breached the mortgage contract as well as Michigan's implied covenant of good faith and fair dealing in three respects: by

a. Failing to send Plaintiff the notices required by the Mortgage;

b. Disingenuously negotiating loss mitigation assistance with the Plaintiff; [and]

c. Misleading Plaintiff about approval and extension of loss mitigation assistance as an alternative to foreclosure.

(Compl. ¶¶ 163-167.)

The mortgage contains no provisions that would have been breached by the second and third of the allegations quoted above. As to the suggestion that they constituted a breach of the covenant of good faith and fair dealing:

> This Court has repeatedly rejected this same "implied covenant/breach of contract" argument because Michigan does not recognize a claim for such a breach. *See, e.g., Upshaw v. Green Tree Servicing LLC*, 2015 WL 9269136, at *4 (E.D. Mich. Dec. 21, 2015) ("Michigan does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing"); *Radske*, 2016 WL 3667957, at *5 ("Plaintiff's claim that Defendants violated the implied covenant of good faith and fair dealing must be dismissed as a matter of law" because Michigan does not recognize that cause of action). [The plaintiff] provides no basis for the Court to rule differently here.

*Wypych*, 2017 WL 1315721, at *7.

This still leaves room for an allegation that in failing to send a notice of default to Plaintiff, Nationstar breached an express term of the mortgage. Section 18 of the mortgage provides that the lender "shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument." (Mortgage at Pg ID 83.) Defendants' principal argument for dismissal of this claim is that Nationstar did in fact send Plaintiff a notice of default and acceleration. This argument is based on a document submitted as one of Defendants' exhibits (Defs.' Mot. Ex. C, Notice of Default) and discussed at the hearing on the present Motion. Plaintiff's counsel did not contest the accuracy of this document at the hearing. The document is not referenced in the Complaint,

however, and so for the reasons mentioned above in the discussion of Count IV, the Court cannot consider the exhibit without converting the present Motion to Dismiss to a summary judgment motion.

Nevertheless, any claim for breach of express contract attempted in Count XI is necessarily deficient even if Plaintiff never did receive notice of his default and acceleration of the loan, however, because Plaintiff has failed to allege the existence of any injury caused by a breach of an express term in the mortgage.

"To plead a breach of contract claim under Michigan law, a plaintiff must allege: (1) the existence of a contract between the parties; (2) the terms of the contract; (3) that defendant(s) breached the contract; and (4) that the breach caused his or her injury." *Winters*, 2016 WL 5944717, at *3 (citing *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999)). In *Winters*, the court dismissed a substantially identical breach of contract claim because the plaintiff "failed to allege that she suffered any injury as a result of the alleged breach." *Winters*, 2016 WL 5944717, at *3. Plaintiff's breach of contract claim does not specify any injury that arose from the alleged breach, and while this alone would be enough to dismiss the claim, two additional considerations further weaken any argument Plaintiff could make that he has alleged an injury that resulted to him

from Nationstar's failure to give him notice that he had defaulted on the loan.[7]

First, some of the allegations in the Complaint seem to imply that Plaintiff was aware he was in default at or shortly after the time he defaulted, which would preclude any possibility that he suffered injury from a failure on Nationstar's part to notify him of his default. The Complaint alleges that "shortly after falling behind on his obligations under the Mortgage, Plaintiff contacted Nationstar Mortgage, LLC regarding his options in regards to loss mitigation." (Compl. ¶ 54.) Elsewhere, the Complaint alleges that after falling behind on his payments, Plaintiff "attempted to catch up on his payments and started dealing with Nationstar Mortgage, LLC representatives to attempt to work out his mortgage obligations with a loan modification." (Compl. ¶ 21.) These allegations weaken any potential inference that Plaintiff was unaware of his default, and therefore damaged by Nationstar's alleged failure to inform him of it.

Second, and relatedly, the Complaint makes other allegations that suggest that Plaintiff had notice of the foreclosure sale itself, even if he had no notice of his default. Plaintiff alleged that "[o]n or about January 22, 2016, a notice of the Sheriff's Sale was allegedly posted on the door of the residence on the Subject

---

[7] Plaintiff did not actually make this argument, or any argument regarding a breach of express mortgage terms in his Response, focusing instead on the alleged breach of the covenant of good faith and fair dealing. Dismissal of any "breach of express contract" claim that the Complaint can be interpreted as pleading is therefore warranted on abandonment grounds as well.

Property" and that "[a] Notice of Sale was allegedly published in an Oakland County newspaper on January 14, 21 and 28 and February 4, 2016." (Compl. ¶¶ 43-44.) The fact that this notice was posted on the door of the house and the fact that it was published in the Oakland County newspaper are both supported by sworn affidavits that were incorporated into the sheriff's deed which Plaintiff attached as Exhibit 4 to his Complaint. (Compl. Ex. 4, Sheriff's Deed at 83-84.) Plaintiff has not specifically alleged that these did not occur, but only that he "had no actual notice of the sale prior to the sale." (Compl. ¶¶ 46-47.) But even taking this as true, the inference of constructive notice based on the posting and publication of the notice of sale is strong enough to further undermine any argument that Plaintiff was injured by Nationstar's alleged failure to send him notice of default. *See Hill v. Sears, Roebuck & Co.*, 492 Mich. 651, 668, 822 N.W.2d 190, 200 (2012) ("A person is chargeable with constructive notice where, having the means of knowledge, he does not use them.... If he has knowledge of such facts as would lead any honest man, using ordinary caution, to make further inquiries, and does not make, but on the contrary studiously avoids making such obvious inquiries, he must be taken to have notice of those facts, which, if he had used such ordinary diligence, he would readily have ascertained.") (quoting *Converse v. Blumrich*, 14 Mich. 109, 120 (1866)). In addition, at the hearing on Defendants' Motion to Dismiss, Plaintiff's counsel acknowledged that Plaintiff

continues to live in the subject home, at which the notices were posted. (See ECF No. 14, Transcript of Defendants' Motion To Dismiss Plaintiff's Complaint at 12, ll. 16-23.)

The two considerations discussed above, together with the fact that Plaintiff has made no specific allegation of damages that resulted from any defect as to his notice of default, make it clear that Plaintiff has not pled an injury caused by a contractual breach, which is an essential element of any breach of contract claim.

For those reasons, the Court will dismiss Count XI.

### 6.     Intentional Misrepresentation and Fraud (Count XII)

Count XII alleges that Nationstar made knowingly false representations to Plaintiff—specifically, that he was being reviewed for a loan modification (even though Nationstar knew foreclosure proceedings were underway), and that "the foreclosure and sheriff's sale were performed lawfully and in accordance with industry standards [such] that Plaintiff would not be able to get his house back." (Compl. ¶ 170.)

Fed. R. Civ. P. 9(b) imposes a heightened pleading standard on fraud claims, which "must state with particularity the circumstances constituting fraud." The Sixth Circuit has interpreted Rule 9(b) as requiring a plaintiff to "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting

from the fraud." *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003) (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir. 1993)).

None of Plaintiff's fraud or misrepresentation claims rise to this level of specificity. Count XII will be dismissed.

### 7. Michigan Consumer Protection Act (Count XV)

Count XV alleges that Nationstar "participated in unfair, unconscionable or deceptive methods, acts or practices in its conduct of trade or commerce in violation of the Michigan Consumer Protection Act, MCL 445.901, et seq." (Compl. ¶ 192.)

Defendants argue that the MCPA by its terms does not apply to residential mortgage transactions regulated by federal law, and Plaintiff did not address this argument in his Response—or, for that matter, defend his MCPA claim at all. He has abandoned the claim on that basis, although Defendants are correct in any case. Through its exemption provision, the MCPA expressly does not apply to any "transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." Mich. Comp. Laws § 445.904(1)(a). And Michigan courts have made clear that "residential mortgage loan transactions [regulated by federal law] fit squarely within the exemption." *Newton v. West*, 262 Mich. App. 434, 438

(Mich. Ct. App. 2004); *see also Soto v. Wells Fargo Bank, N.A.*, No. 11-14064, 2012 WL 113534, at *8 (E.D. Mich. Jan. 13, 2012*)* (noting that "[c]ourts have consistently applied the MCPA exemption to the mortgage business of regulated lending institutions" and collecting state and federal cases).

Count XV fails both as a matter of law and because Plaintiff has abandoned it, and the Court will dismiss it accordingly.

### 8.     Request for Conversion to Judicial Foreclosure (Count XVI)

Count XVI of the Complaint requests that if the foreclosure be allowed to proceed, the Court convert it to a judicial foreclosure under Mich. Comp. Laws § 600.3101. Plaintiff elaborates in his Response that because a judicial foreclosure offers "options for defense and protections to Plaintiff which are not available under a foreclosure by advertisement," this Court should "use its inherent authority to require the foreclosure to proceed judicially so that it will be carried out correctly, properly and lawfully." (Pl.'s Resp. at 35.)

The plaintiff in *Wypych* raised an identical argument in his brief in response to the defendants' motion to dismiss. There, the court dismissed the claim because the plaintiff

> does not identify any authority under which the Court could exercise such power nor does he explain how the Court could enter such an order given that the redemption period has expired. Moreover, [the plaintiff] has not identified a single case in which a court has exercised its "inherent authority" to grant the relief that [he] seeks.

31

> Given that the Court has concluded that [the plaintiff] has failed to state any viable claims against the Defendants, it will deny [his] request to convert his foreclosure to a judicial foreclosure.

*Wypych*, 2017 WL 1315721, at *7.

This reasoning is wholly applicable to this case as well. Plaintiff has failed to state any claims under state or federal law against Nationstar as the servicer of his mortgage loan, and has provided neither grounds to overturn his foreclosure nor justification for awarding damages under RESPA, TILA, or FDCPA. The Court will therefore deny this request to assume supervision of the already-completed foreclosure under Michigan statutory law, and dismiss Count XVI.

## C. Claims Against Defendant Fannie Mae (Counts II and XIII)

Counts II and XIII are asserted only against Fannie Mae, which purchased the subject property at the sheriff's sale. Neither has merit, and both will be dismissed.

Count II is a "quiet title" claim brought pursuant to Mich. Comp. Laws § 600.2932, which provides that "[a]ny person . . . who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff . . ." irrespective of who is in possession of the land. Mich. Comp. Laws § 600.2932(a). "If the plaintiff established his title to the lands, the defendant shall be ordered to release to the

plaintiff all claims thereto." *Id*. § 600.2932(c). Plaintiff has not established title to the subject property, as he has failed to assert a basis for setting aside the foreclosure by advertisement pursuant to which the property was sold, and so he lost title to the property when the redemption period ran out. Consequently, dismissal of this claim is warranted. "[Q]uiet title is a remedy, not a freestanding claim. Like a request for an injunction or disgorgement, a request for quiet title is only cognizable when paired with some recognized cause of action." *Jarbo v. Bank of N.Y. Mellon*, 587 F. App'x 287, 290 (6th Cir. 2014) (holding that "[b]ecause the [plaintiffs] assert their quiet title claim as a discrete count, the district court was correct to dismiss it"); *see also Shaya v. Countrywide Home Loans, Inc.*, 489 F. App'x 815, 819 (6th Cir. 2012) ("[S]ince the district court did not err by dismissing all of Plaintiffs' claims for failing to state a claim, the district court is affirmed for dismissing Plaintiffs' request to quiet title in their favor."), as amended (May 24, 2012).

Count XIII asserts a claim for "Slander of Title" pursuant to both Michigan common law and Mich. Comp. Laws § 565.108. In *Radske*, this Court dismissed a materially identical claim in an action brought by Plaintiff's counsel:

> Both common law slander and Mich. Comp. Laws § 568.108 require that a plaintiff show falsity, malice, and special damages, i.e. that the defendant maliciously published false statements that disparaged a plaintiff's right in property, causing special damages. Malice may not be inferred merely from the filing of an invalid lien; the plaintiff must

show that the defendant knowingly filed an invalid lien with the intent to cause the plaintiff injury.

In the present case, Plaintiff failed to plead that Defendants acted with the requisite malice. . . . Plaintiff's threadbare allegations do not set forth a plausible claim of slander of title (at common law or pursuant to the statute) and fail to even set forth all of the required elements.

*Radske*, 2016 WL 3667957, at *6 (internal citations and quotation marks omitted).

Numerous other courts in this District have also dismissed similar slander of title claims brought by Plaintiff's counsel. In some instances, the court dismissed the claim for failure to make specific allegations of a malicious statement, as this Court did in *Radske*. *See, e.g., Mrla*, 2016 WL 3924112, at *9 ("Plaintiff has left Defendants and this Court to guess at which, if any, of Defendants' alleged actions constitute a slander of title."); *Trudell*, 2016 WL 6080822, at *9; *Watts*, 2016 WL 8188768, at *11. In others, the court dismissed the claim as abandoned because the plaintiff failed to offer any argumentation in support of it. *See, e.g., Cruz*, 192 F. Supp. 3d at 838–39; *Wypych*, 2017 WL 1315721, at *4; *Winters*, 2016 WL 5944717, at *4.

Both deficiencies are present here. Counts II and XIII will be dismissed for failure to state a claim.

## IV.     CONCLUSION

Plaintiff has not made allegations sufficient to state a claim in any of the Counts set forth in his Complaint. Accordingly, Defendants' Motion to Dismiss is

hereby GRANTED, and the case is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.


s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated: May 26, 2017


CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 26, 2017.

s/D. Tofil
Deborah Tofil, Case Manager